UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHKELQESA DERVISHI on behalf  :  3:11cv1018
of T.D.,                      :
      Plaintiff,         :
                              :
v.                            :
                              :
STAMFORD BOARD OF EDUCATION,  :
      Defendant.         :

**MEMORANDUM OF DECISION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shkelqesa Dervishi proceeding In Forma Pauperis ("IFP"), brings this action on behalf of her minor son, T.D., to appeal the decision of a due process administrative hearing officer pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. Plaintiff also claims that defendant Stamford Board of Education breached a settlement agreement. For the following reasons, defendant's motion for summary judgment will be granted.

**Factual Background**

The administrative record and the supporting exhibits reveal the following factual background.

T.D. is a student who has been identified as eligible for special education and related services under the category of autism. In November 2009, the School Board and T.D.'s parents ["Parents"] entered into a settlement agreement, which set forth a plan to have independent consultants evaluate T.D. and recommend a program. The

parties agreed that they would be bound by the recommendation of three independent consultants regarding an appropriate special education program and placement.

Dr. Bridget Taylor was identified in the settlement agreement as the jointly-agreed upon consultant to conduct an evaluation of T.D.  However, the settlement agreement provided that if Dr. Taylor was unable to complete the evaluation, the Parents would submit a list of five consultants with the qualifications and experience required to conduct the pycho-education evaluation.

During the implementation of this agreement and the development of T.D.'s program, the School Board agreed to fund T.D.'s home-based program.

Despite many scheduling difficulties, the parties did proceed with Planning and Placement Team ("PPT") meetings to develop an Individualized Education Plan ("IEP") for T.D. in May, June, July, August 2010.

In August 2010, the IEP for T.D. for the 2010-2011 school year was finalized.  It included ten goals and objections; placement at the School Board's Roxbury school where T.D. would have special education supports readily available to him; and a transition plan for T.D.'s placement at the school.

In late August, the Parents rejected the IEP and sought a "stay put" of T.D.'s current home program.  The School Board reconvened a PPT on November 22, 2010, at which time the Parents requested placement at the McCarton School, a public school in New York.  The School Board denied this request.

In November 2010, the Parents requested a due process hearing seeking reimbursement for a home program and placement of T.D. at the McCarton School.  In a Final Decision and Order dated May 13, 2011, a Hearing Officer ("H.O.") found that

the Stamford Board of Education had offered T.D. an appropriate program for the 2010-2011 school year at one of the Stamford Board of Education schools. Accordingly, the H.O. held that the School Board had not denied T.D. a free appropriate public education ["FAPE"]; that the parent should not be reimbursed for their home program; and that the School Board was not responsible for the plaintiff's proposed placement of T.D. at the McCarton School.

## Discussion

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is

3

insufficient; there must be evidence on which the jury could reasonably find for that party. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Summary judgement is a pragmatic procedural mechanism in the federal rules for resolving IDEA actions.  Lillibask v. Connecticut Dept. of Educ., 397 F.3d 77, 84 (2d Cir. 2005).  The Court's inquiry is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed.  A.E. v. Westport Bd. of Educ., 463 F. Supp. 2d 208, 215 (D. Conn. 2006)

Under IDEA, when a federal court reviews the findings and conclusions reached in a state administrative proceeding, it must base its decision on the preponderance of the evidence, after reviewing the administrative record and any additional evidence presented. Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122-123 (2d Cir. 1998).  This is not an invitation to the courts to substitute "their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Federal

courts do not "rubber stamp" administrative decisions but must accord "due weight" to these proceedings. Walczak, 142 F.3d at 129.

In Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 191 (2d Cir. 2005), the Second Circuit emphasized that district courts should pay deference to administrative judgments on matters of educational policy. Deference is particularly appropriate where the state hearing officer's review has been thorough and careful. Walczak, 142 F. 3d at 122.

However, in matters of statutory interpretation or mixed issues of law and fact, the district court is not bound by a rule of deference but may apply a de novo standard of review. Muller v. Committee on Special Educ. of East Islip Union Free Sch. Dist., 145 F.3d 95, 102 (2d Cir. 1998).

IDEA

IDEA provides federal grants to states so that they may in turn provide disabled children with a free appropriate public education ["FAPE"] in the least restrictive, appropriate environment. See 20 U.S.C. §§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412(a)(5)(A).

When a child is identified as potentially requiring special education services, the local education agency ["LEA"] has a duty to complete an evaluation process; failure to complete this process constitutes a denial of a FAPE. 20 U.S.C. § 1414(b)(2)(A)(i); see N.G. v. Dist. of Columbia, 556 F. Supp. 2d 11, 16 (D. D.C. 2008). The LEA must evaluate the student within a reasonable time after notice or suspicion of a disability. 30 C.F.R. § 300.301(c)(1); El Paso Indep. Sch. Dist. v. Richard R., 567 F. Supp. 2d 918, 950 (W.D. Tex. 2008).

To conduct the evaluation, the LEA "shall use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining" whether the child is disabled under the Act.  20 U.S.C. § 1414(b)(2)(A)(i).  Section 1412(a)(10)(iii) directs the LEA to ensure a "timely and meaningful consultation" with the private school representatives and parents of a student with disabilities placed at a private school during the design and development of special education services.

Once the student is determined to be eligible, the student's educators and parents meet and jointly develop an IEP for each year of the child's education.  See 20 U.S.C. §§ 1401(11), 1414(d); Polera v. Bd. of Educ. of the Newburgh Enlarged Stamford Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002); see also P.J. v. Conn. Bd. of Educ., 788 F. Supp. 673, 676 n.1 (D. Conn. 1992) ("The IEP is produced by what is known as the planning and placement team, which must include a qualified special education representative of the school board, the child's teacher, and one or more of the child's parents, and may also include individuals who evaluate the child or provide special education services to the child.").  The IEP must provide personalized instruction with sufficient support services to permit the child to benefit educationally.  Rowley, 458 U.S. at 203.  It is through the IEP that the school may monitor the student and her progress.  Polera, 288 F.3d at 482.

IDEA provides for procedural safeguards through which a parent can ensure her child's education.  20 U.S.C. § 1415(a).  These procedural safeguards include the rights "to examine all records relating to [the] child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the

provision of a free appropriate public education to such child and to obtain an independent educational evaluation of the child," 20 U.S.C. § 1415(b)(1); written notice prior to any changes in the child's identification, evaluation or educational placement, 20 U.S.C. § 1415(b)(3); "an opportunity to present complaints with respect to" such matters, 20 U.S.C. § 1415(b)(6); and, whenever any such complaint is made, the right to "an impartial due process hearing ... by the State educational agency or by the local educational agency," with corresponding rights to be accompanied and advised by counsel, to present evidence and cross-examine witnesses, to receive a written record of proceedings, and to receive written findings of fact and decisions.  20 U.S.C. § 1415(f)(1) & (h).

The Supreme Court has stated that "adequate compliance with the procedures prescribed in IDEA would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." Rowley, 458 U.S. at 206.  Thus, the Court's procedural inquiry is "no mere formality." Walczak, 142 F.3d at 122.  However, procedural defects do not constitute denial of a FAPE unless they result in the loss of educational opportunity. Adam J. v. Keller Indep. Sch. Dist., 328 F.3d 804, 811-12 (5th Cir. 2003).

Parents who object to their child's identification, evaluation or educational placement are entitled to an impartial due process hearing.  20 U.S.C. § 1415(f). Parties aggrieved by a hearing officer's decision at the due process hearing may bring a civil action.  20 U.S.C. § 1415(i)(2).

Upon review of an administrative decision, a district court retains authority to "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).

Such relief includes the power to order reimbursement to parents for their expenditures on private education for their child if (1) the school district failed to provide a FAPE and (2) the private education services were appropriate for the child's needs.  <u>Forest Grove Sch. Dist. v. T.A.</u>, 527 U.S. 230, 247 (2009).

<u>Review of Hearing Officer's Decision</u>

Generally, a court reviewing a hearing officer's decision relevant to the IDEA should consider whether the school board complied with the procedures set forth in the IDEA; and then determine whether the IEP developed through the IDEA's procedures was reasonably calculated to enable the child to receive educational benefits.  <u>Rowley</u>, 458 U.S. at 206-207.  Where the parents of a disabled child have placed the child in a private educational setting, reimbursement of educational services is appropriate when a school district has failed to provide a FAPE and a child's private placement is appropriate, without regard to the child's prior receipt of services.  <u>Forest Grove School Dist.</u> 557 U.S. at 243.  A reviewing court must examine the record for any objective evidence indicating whether the student was "likely to make progress" under the school board's proposed plan.  <u>Walczak</u>, 142 F.3d at 130.

Here, the hearing officer held that the School Board complied with IDEA's procedural safeguards by offering PPT meetings that satisfied the Parents' schedules or providing the Parents with the opportunity to participate telephonically or through videoconferencing.

The Parents complained that the School Board violated IDEA's procedural requirements by holding two Planning and Placement Team ("PPT") meetings for development of the IEP during the summer months while they were out of the country.

8

The School Board was obliged to ensure that one or both parents were present at the IEP meetings or were afforded the opportunity to participate. Cerra, 427 F.3d 186 at 192. The regulations provide that "[i]f neither parent can attend an IEP Team meeting, the public agency must use other methods to ensure parent participation, including individual or conference telephone calls." 34 C.F.R. § 300.322(a)-(c). Where the school district is unable to convince the parents that they should attend, the School District may conduct an IEP meeting without a parent in attendance but must keep a record of its attempts to arrange a mutually agreed on time and place. 34 C.F.R. § 300.322(d).

  The H.O. noted that the Parents had not availed themselves of the opportunities to participate in the two summer meetings. The School Board had offered numerous dates to the Parents for IEP meetings and offered alternative means of telephone or videoconferencing to participate in the meetings while out of the country. The Parents did not accept the offer to participate by telephone or videoconferencing while out of the country, and the father did not attend the noticed PPT that was held after he had returned to Connecticut.

  Courts have recognized that no procedural violation occurs for failure to have parents at an IEP meeting where parents have demonstrated intransigence in availing themselves of participation in the meetings. See Hjortness v. Keenan Joint Sch. Dist., 507 F.3d 1060, 1066 (7th Cir. 2007); Board of Educ. of the Toledo City School Dist. v. Horen, 2010 WL 3522373, *16 (N.D. Ohio). Accordingly, the H.O. found that the Parents had been provided with a meaningful opportunity to participate in the development of the IEP. The Court agrees with the hearing officer. The School Board

made significant efforts to involve the Parents in the IEP development.  The Court notes that, after the Parents did not participate in the two summer PPT meetings, the School Board apprised the Parents of the development of the IEP by recording the meetings and providing the Parents with transcripts.

Further, the Parents fault the School Board for failing to consider the parent initiated evaluation by Dr. McCarton.  The PPT reconvened on November 22, 2010, at which time the Parents disclosed the McCarton evaluation.   At a hearing in January 2011, Wayne Holland, the School Board's director of special education, explained that the evaluation was reviewed and found to be substantively no different from the other evaluations already reviewed by the PPT, that the McCarton evaluation had not been considered to be part of the independent evaluations as set forth by the settlement agreement, and that settlement agreement had provided that the parties agreed to accept the recommendations of the independent consultants in developing the IEP.  Accordingly, the Court finds that the H.O.'s treatment of the McCarton evaluation does not constitute error.

The record shows, and plaintiff has not adduced evidence indicating otherwise, that the PPT meetings and IEP development were procedurally compliant.

Similarly, the Court affirms the H.O.'s finding that no evidence raises an inference that the School Board's IEP was not appropriate or that T.D. would not likely make progress under the program.  The independent consultants participated in the PPT process and all agreed that the IEP was appropriate for T.D.  T.D.'s home education providers also reviewed and updated the IEP relative to his abilities at the time the IEP was developed.  The IEP sought to provide T.D. with support from

independent consultants and a school-based team; it anticipated that frequent meetings would be scheduled to allow for collaboration and updates as to T.D.'s needs. Additionally, the transition plan provided for T.D.'s reentry to a school setting on a gradual basis.

The H.O. found that the IEP represented the least restrictive environment as it allowed for T.D. to have access to special education as required and access to model typically-developing peers. The record evidence supports the finding in this respect.

Finally, the Court also affirms the H.O.'s finding that the Parents "failed to establish the appropriateness of the home program placement and the McCarton placement." The evidence at the hearing indicated that the home-based education program had resulted in regression of T.D.'s skills and that his problematic behaviors had increased. The Parents failed to provide evidence relevant to the program at the McCarton School and whether it would have been appropriate for T.D.'s needs. Summary judgment will enter in defendant's favor on this basis.

<u>Alleged Breach of Settlement Agreement</u>

Plaintiff asserts that the School Board failed to comply with the agreed-upon procedures for developing the IEP. Specifically, plaintiff alleges that the School Board failed to timely and properly evaluate and assess T.D., failed to convene a timely PPT, and refused to contract with the evaluator selected by the parties and those proposed by the parties.

Settlement agreements that concern the identification, evaluation or educational placement of the child or the provision of a FAPE are properly reviewed by an H.O. and subject to the same deferential review afforded to an H.O.'s administrative decision

after a due process hearing.  H.C. v. Colon-Pierrepont Cent. Sch. Dist., 341 Fed. Appx. 687, 690 (2d Cir. 2009).  Here, the H.O. considered plaintiff's assertion that the School Board had not complied with the settlement agreement due to failure to contract with Dr. Bridget Taylor, who had been jointly agreed upon by both parties as an evaluator, and the Parents' proposed evaluators.  The H.O. found that the School Board had not violated the terms of the agreement as asserted by the Parents.  After Dr. Taylor indicated that she would not be available to take T.D.'s deposition, the Parents emailed the School Board their list of five suggested consultants.  The School Board selected Dr. Robin Nuzzolo from the Parents list of consultants.  Accordingly, the Court will affirm the H.O.'s finding of no breach of the settlement agreement in this respect.

As to the assertion that the School Board failed to convene a timely PPT as forth by the settlement agreement, the H.O. held that the School Board had taken reasonable steps to convene the PPT and develop the IEP in light of the Parents and consultants scheduling conflicts.  The record evidence demonstrates that the PPT meetings were cancelled by the Parents or the Parents' selected consultant, that the School Board offered numerous dates, and that the School Board suggested the use of teleconferencing or Skype to facilitate the PPT.  The H.O. did not err in finding no breach of the settlement agreement in this regard.

The Parents maintain that the School Board failed to timely and properly evaluate and assess T.D. The H.O. concluded that the School Board had satisfied its obligation pursuant to the settlement agreement, which required the School Board to contract with the independent consultants.  The record evidence shows that the School Board arranged for the timely evaluations fo T.D. with the consultants.

Reimbursement for Home-Based Services

The Parents have invoked the "stay-put" doctrine in an attempt to obtain reimbursement of the home-based schooling.  IDEA provides that a child should remain in the then-current placement during the pendency of the proceedings unless the state or local education agency and the parents agree otherwise.  20 U.S. C. § 1415(j).

 "Section 1415 requires a school district to continue funding whatever educational placement was last made by the agency and consented to by the parent before the parent requested a due process hearing." T.M v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014).  This stay-put provision requires that the educational agency maintain the status quo placement even if the child would not otherwise have a substantive right to it.  Doe v. East Lyme Bd. of Educ., 2015 WL 3916265, *9 (2d Cir. 2015).   [P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk."  Burlington v. Department of Edu. of Mass., 471 U.S. 359, 373 (1985).  To determine a child's "then current educational placement," a court looks to the placement described in the child's most recently implemented IEP; the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or the placement at the time of the previously implemented IEP.  Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist., 386 F.3d 158, 163 (2d Cir. 2004). Generally, the pendency placement is the last unchallenged IEP; however, if there is an agreement between the parties relative to placement during the proceedings, the agreed upon placement can supercede the prior unchallenged IEP as the then current placement.  Gabel v. Board of Educ. of the Hyde Park Central School District, 268 F.

Supp. 2d 313, 324 (S.D.N.Y. 2005). When a parent rejects a stay-put placement by unilaterally placing the student elsewhere, retroactive reimbursement for that placement is available, if at all, only through a FAPE claim. Doe, 2015 WL 3916265, at *9.

Defendant asserts that T.D.'s home-based education resulted from a settlement agreement between the parties and cannot be considered a pendency placement. Defendant's argument relies upon the holding in Zvi D. v. Ambach, 694 F.2d 904, 907 (2d Cir. 1982) that an agreement as to payment for a private school, was not entitled to treatment as a stay-put placement, although an agreement as to placement at a private school would be considered a stay-put placement. The Second Circuit has more recently questioned its holding distinguishing between reimbursement payments and placement in light of more recent versions of the IDEA regulations and the Supreme Court's decision in Burlington v. Dep't of Educ., 471 U.S. 359 (1985). See Doe, 2015 WL 3916265, at *13 n.12; Board of Educ. of Pawling Central School Dist. v. Schutz, 290 F.3d 476, 483 n.7 (2d Cir. 2002). Both Doe and Schutz appear to limit Zvi's holding to the context of payments stemming from a settlement agreement rather than an obligation to fund services arising from an IEP or a hearing officer's order.[1]

In the instant case, the settlement agreement contemplates that the funding for home-based funding is temporary pending T.D.'s review and recommendation by independent consultants, by which the Parents and School Board agreed to be bound.

---

[1] In Zvi, the settlement agreement required the school district to pay for Zvi's private school education for one year with the stipulation that a review of Zvi's "classification would be conducted at the end of the current year with a view toward placing him in an appropriate public school program" the following year. Thus, the payment for private school was conditioned on the contemplation that Zvi would be returned to the public school system.

14

The settlement agreement stated explicitly that the payments were conditioned (1) upon the Parents agreement not to seek additional reimbursement for additional costs related to T.D.'s educational program through the 2009-2010 school year and (2) upon T.D.'s attendance at the program selected by the independent consultants during the applicable portion of the 2009-2010 school year.  Further, the settlement agreement provided that the School Board made the payments for the home-based education "solely as an accommodation to the Parents and in order to avoid the costs of protracted litigation."

Regardless of whether Zvi's holding remains intact, the settlement agreement to reimburse for home-based education does not constitute the prior placement for purposes of triggering the stay-put obligation.  It was expressly limited in duration, conditioned upon the Parents agreement to accept the recommendations of the independent consultants, and had not been approved by the School Board or ordered by a hearing officer as an appropriate placement.  Further, the School Board's contractual duty to reimburse for home-based education ceased after the Parents rejected the independent consultants' recommended IEP for T.D.

The School Board's obligation to provide stay-put services was triggered when the Parent's administrative complaint was filed in November 2010. See Doe, 2015 WL 3916265, *11.  Thus, the IEP approved by the School Board in August 2010 constitutes the current placement for purposes of the stay-put obligation.

The Court will grant defendant's motion for summary judgment.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment [doc. #80] is GRANTED. The Court hereby affirms the hearing officer's decision. The clerk is instructed to enter judgment in favor of defendant and to close this case.

Dated at Bridgeport, Connecticut, this   5th   day of August, 2015.

                                    /s/
                          Warren W. Eginton
                          Senior United States District Judge